[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties intermarried on September 3, 1988 at New Haven, Connecticut. They have resided continuously in this state since that time. There are four minor children issue of this marriage: Amanda Taylor, born August 16, 1989; Emily Taylor, born November 29, 1991; Charles Taylor, born November 18, 1993; and Molly Taylor, born November 18, 1993.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down and judgment may enter on the grounds of irretrievable breakdown.
The court has carefully considered the criteria set forth in §§ 46b-56, 46b-81, 46b-82, 46b-84 and 46b-62 of the Conn. General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married for approximately ten years and five months. Both parties are 39 years of age and in reasonably good health. The defendant wife is completing her education and hopes to obtain her degree in September 1999 which will enable her to do preschool teaching. The four minor children are aged nine, seven, and the twins aged five. Although the defendant took on the traditional role of homemaker, she did have several sporadic part-time jobs during the course of the marriage. Her earnings in 1998 were approximately $5,000. She indicates a year to date 1999 income of approximately $60 per week from her present part-time jobs on her current financial affidavit.
The plaintiff husband is in charge of the Sikorsky Credit Union Service organization. He earns approximately $54,700 per year.
The parties purchased their marital home in 1991. The plaintiff's parents gave the parties $50,000 to assist in this purchase. The plaintiff's parents also gave each of the parties a gift of $7,500 each in December 1997. These sums went to the support and maintenance of the family. In March 1998, shortly before this case was instituted, the husband withdrew $3,600 from CT Page 2398 the parties' joint savings account and set up custodial accounts for each of the four children with that amount. The husband did not consult or discuss with the wife concerning the withdrawal and use of these joint funds.
The parties separated in March 1998. No useful purpose would be served by a review of all the evidence presented in this matter.
Unfortunately, the parties were unable to resolve their marital difficulties. The court declines to assess fault to — either party for any breakdown of the marital relationship.
The following orders shall enter:
CUSTODY
There shall be joint legal custody of the four minor children with primary physical custody with the defendant wife.
VISITATION
The plaintiff husband shall have reasonable and flexible visitation with the minor children to include but not limited to the following:
 I. WEEKEND VISITATION A. Weekends one and two of the month from 5:30 p. m. on Fridays during the school year to Sunday at 6 p. m. During the summer vacation, the plaintiff shall return the children at 8 p. m.
 B. Weekend three of the month the defendant wife shall have the entire weekend with the children. This schedule shall then rotate to the preceding three weekend cycle
 C. The plaintiff father shall be responsible for the pick up and drop off of the children at the defendant's home.
 II MIDWEEK VISITATION
A. Preceding the weekend that the defendant mother has CT Page 2399 the children, the plaintiff father will have the children Friday evening from 5:30 p. m. to 7:30 p. m.
 B. The plaintiff father will have the children on Tuesdays for dinner from 5:30 p. m. to 7 p. m. (school year) and 8 p. m. during summer.
 III HOLIDAYS, BIRTHDAYS AND SCHOOL VACATIONS A. Birthday visitation shall be shared by the parties as is mutually agreeable.
B. Mother's Day shall be with the mother.
C. Father's Day shall be with the father.
 D. Good Friday and Easter Sunday shall be with the mother.
 E. The father shall be entitled to have the children on Rosh Hashana, Yom Kippur and Passover, provided it does not interfere with their schooling.
F. The mother shall have the Fourth of July holiday.
 G. The father shall have Memorial Day and Labor Day to six p. m.
 H. The parties shall alternate Halloween with the mother to have the children in 1999. The father shall have the children from 5:30 p. m. to 8 p. m. on Halloween commencing in 2000 and every other year thereafter.
 I. The father shall have the children for the Thanksgiving holiday commencing Wednesday at 3:30 p. m. to Friday at 4 p. m. The mother shall be entitled to the remainder of the Thanksgiving weekend.
J. The mother shall be entitled to Christmas Eve Day and evening and Christmas Day to 3:30 p. m. The father shall have the children from 3:30 p. m. Christmas Day to December 26 at 4 p. m. In the event December 26 falls within the father's regular weekend rotation, them he shall return the children on Sunday CT Page 2400 at 7 p. m.
 K. The father shall have the children on New Year's Eve day from 3 p. m. to January 1 at 3:30 p. m.
 L. The December school vacation shall be with the mother except that the father shall be entitled to have the children for two overnights in addition to regular visitation, which shall be arranged by mutual agreement of the parties, with the father notifying the mother at least two weeks in advance of the dates he wants to spend with the children.
 M. The remaining holidays shall be discussed between the parties and a schedule of visitation with the father shall be arranged by mutual agreement.
 N. Each parent shall be entitled to vacation time with the children during the summer vacation. Arrangements and dates for each parent shall be agreed upon by May 15 of each year commencing in 1999.
 O. The holiday/vacation schedule shall supercede the normal visitation schedule.
 IV ACCESS
During the period that the children reside with either parent, the other parent shall have reasonable access to the children by mail or by telephone during reasonable hours of the day and evening.
 V RELOCATION
In the event the defendant desires in the future to remove and permanently relocate herself and the minor children outside the State of Connecticut, she shall give the plaintiff 90 days written notice of such intent to relocate.
 VI TRANSPORTATION
The plaintiff further shall be responsible for all pick up and drop off of the minor children for visitation purposes unless the parties mutually agree to other arrangements. CT Page 2401
 VII TELEPHONE CONTACT
The father shall be entitled to have telephone contact with the minor children on a daily basis at reasonable hours and for a reasonable period of time.
 VIII MORNING VISITATION
The court is very sympathetic to the plaintiff father's desire to see his children on a daily basis. He wishes to continue the close relationship he indicates he has with his children. The court is also mindful of the concern of disruptedness to the mother, having her exhusband waiting outside her front door every morning. Each party should be able to get on with their respective lives, without having the other former spouse looking over his/her shoulder. Both parties will have to learn to share the time they spend with their children. The children live within a mile of the school at this time and the time spent by the children in the car going to school is minimal at best. In the event that the father moves to Milford from New York where he is presently residing, the parties may want to consider some midweek overnight visitation.
Under the present circumstances, it is ordered that the mother shall bring the children to school Monday through Friday and shall arrive at school no later than 8:10 a.m. If the father desires, he can meet his children at school and spend some time with them or walk them into school, if school policy permits.
CHILD SUPPORT
1) The husband shall pay child support for the benefit of the minor children in the amount of $375. per week. The husband's obligation for child support shall end when each child attains the age of eighteen, becomes emancipated, dies, or upon the husband's death, whichever event shall first occur. However, if any child has attained age eighteen and is a full time high school student, such payment shall continue until such time as the child completes the twelfth grade or attains the age of nineteen, whichever first occurs.
2) Child support payments shall commence on the first Friday following the date of this memorandum and shall be considered a prospective payment. The Pendente Lite orders remain in effect until that date. CT Page 2402
REAL ESTATE
1) The parties jointly own the marital home located at 12 Chapel Street, Milford. The Court finds that the real estate has a fair market value of $144,000 subject to mortgage totaling $98,425. leaving a net equity of $45,575.00.
2) It is ordered that the husband shall forthwith quitclaim all his right, title and interest in and to 12 Chapel Street, Milford, Connecticut to the wife. The wife shall be solely responsible for the first mortgage as of March 1, 1999 and the Home Equity loan as of March 1, 1999 and shall hold the husband harmless therefrom.
3) The wife, simultaneously with this transfer, shall execute a mortgage deed and note to the husband in the amount of $22,787.50 plus credit to the husband for the February 28, 1999 payment on the home equity loan, which he is ordered to pay.
The terms of said mortgage note shall provide for interest at the rate of 5-1/2% per annum.
4) Said note shall be payable upon the first of the following events to occur:
1) Wife's remarriage;
2) Wife's cohabitation as defined by statute;
3) Sale of the residence;
4) Wife no longer resides in said residence;
 5) The youngest child reaches the age of nineteen years;
6) The death of the wife;
7) Refinancing by the wife.
5) Defendant's counsel shall prepare the appropriate mortgage deed and note and the plaintiff's counsel shall prepare the appropriate quit claim deed. CT Page 2403
6) The defendant shall be responsible for all expenses related to the property in addition to the first mortgage, the Home Equity Loan, Insurance and taxes and shall indemnify and hold the husband harmless from any and all claims and liabilities arising out of said real estate.
ALIMONY
1) The husband shall pay to the wife as periodic alimony the sum of $125. per week commencing on the first Friday following the date of this Memorandum of Decision. Said alimony shall be paid until the first of the following events shall occur:
a) Wife's remarriage;
b) Wife's cohabitation as defined by statute;
c) Death of either party;
 d) Five years from the date hereof. The term of alimony shall be non-modifiable.
Time limited alimony is awarded to give the wife the opportunity to complete her education and re-enter the business world. In five years, the four children will be in school full
The court has also considered the tax consequences to the husband in making this award as the alimony deduction reduces the husband's adjusted gross income.
Based on the wife's financial affidavit, she will still have a substantial shortfall even with her earnings of $100 per week. The court notes however, on the defendant's previous affidavits her expenses were approximately $760 per week, approximately $175. per week lower. This is unfortunately a situation where the income of the plaintiff is not enough to support two households in the style to which they have been accustomed. Both parties will be struggling to maintain themselves, however the court has had to consider the needs of the wife and the four minor children.
PERSONAL PROPERTY
1) The parties shall divide their personal property located at the marital home to their mutual satisfaction. In the event CT Page 2404 the parties are unable to agree, the issue shall be referred to the Family Relations Division at Milford for mediation. In the event mediation is unsuccessful, then the parties shall return to Court for a hearing and orders thereon.
2) The husband is awarded the 1989 Toyota Tercel Motor Vehicle. The wife shall execute whatever documents are necessary within 10 days of date to secure the husband's interest in said motor vehicle.
3) The wife is awarded the 1994 Dodge Caravan. The husband shall execute whatever documents are necessary within 10 days of date to secure the wife's interest in said motor vehicle. The wife shall be responsible for any car tax, car insurance, and registration for said motor vehicle from the date of this memorandum.
4) The husband shall remain the custodian of the children's accounts with Sikorsky Federal Credit Union. Said accounts shall be used for the health, education and welfare of the minor children. The husband shall provide the wife with an annual accounting of the sums in each account. Said accounts total approximately $3248.56 at this time, according to the evidence presented. The money for these accounts came from the $3600 the husband withdrew from the parties joint savings account prior to the institution of this dissolution.
5) The wife is awarded 50% of the American Express Mutual Fund valued as of the date of this memorandum. The husband shall be entitled to a credit of $2200. which represents that portion of the funds acquired prior to the marriage. This transfer shall be without any tax consequences to either party. A QDRO may be necessary.
6) The wife is awarded 50% of the Fleet IRA valued as of the date of this memorandum. This transfer shall be without any tax consequences to either party.
7) The wife is awarded 50% of the First Fidelity 401(k) valued as of the date of this memorandum. This transfer shall be without any tax consequences to either party. A QDRO may be necessary.
8) In the event QDRO's are required to effectuate the above transfer of funds, counsel for the wife shall prepare the CT Page 2405 appropriate documents. Plaintiff's counsel shall cooperate in the drafting and acceptance of said QDRO's.
9) The wife was involved in a motor vehicle accident in May 1998 just prior to the institution of this dissolution. The wife shall be entitled to all of the proceeds received from the resolution of her personal injury claim.
DEBTS
1) The parties have agreed to file a joint 1998 tax return both Federal and State. It is further ordered that any income tax refund from the Federal and/or State tax return shall be applied to the Providian Visa Account debt which was used for family and household expenditures. Any balance remaining on this debt shall be split equally between the parties. Counsel for the plaintiff shall receive the tax refunds as trustee and shall make the appropriate payment on this account. Counsel for the defendant shall be entitled to verification of the amount paid and the remaining balance, if any.
TAX EXEMPTION
1) The husband shall be entitled to claim the four minor children as exemptions for Federal and/or State income tax purposes provided he is current in the support payments as of December 31st. This provision shall be modifiable. This order is based on the parties present income as well as the disposition of the Real Estate.
LIFE INSURANCE
1) The husband shall maintain a life insurance policy in the amount of $200,000 and he shall name the minor children as irrevocable beneficiaries thereon, for so long as the husband has an obligation for support.
This provision shall be modifiable.
MEDICAL INSURANCE
1) The husband shall maintain Medical and Dental coverage as is available through his employment for the benefit of the minor children. CT Page 2406
2) Any unreimbursed medical and dental expenses shall be equally divided between the parties. Section 46b-84(c) C.G.S. shall apply to the processing of insurance claims.
COBRA
1) The wife shall be entitled to avail herself of medical coverage as is available through the husband's employer, pursuant to COBRA, at her sole expense.
COUNSEL FEES
1) Each party shall be responsible for their respective Counsel fees.
COPPETO, J.